10 N.Y.3d 628 (2008)
891 N.E.2d 289
861 N.Y.S.2d 256
936 SECOND AVENUE L.P., Appellant,
v.
SECOND CORPORATE DEVELOPMENT CO., INC., et al., Respondents.
Court of Appeals of the State of New York.
Argued April 29, 2008.
Decided June 12, 2008.
*629 Bryan Cave LLP, New York City (Mark Jon Sugarman and David J. Bloomberg of counsel), for appellant.
Rosenberg & Estis, P.C., New York City (Deborah E. Riegel, Gary M. Rosenberg and Jason R. Davidson of counsel), for respondents.
Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

OPINION OF THE COURT
GRAFFEO, J.
In this lease dispute, the issue is whether the net lease itself *630 must be considered by appraisers in valuing the demised premises for purposes of establishing the net rent for a renewal term of the lease. Because the net lease does not exclude its consideration, we conclude that it must be taken into account in valuing the property.
In 1966, defendant Second Corporate Development Co., Inc. (lessor), the owner of property located at East 50th Street and Second Avenue in Manhattan, entered into a 20-year net lease with the predecessor-in-interest to plaintiff 936 Second Avenue L.P. (lessee).[1] The property consists of three adjoining buildings that house 22 rent-regulated apartments and four retail stores. Lessee was afforded the option to renew its lease for two additional 20-year terms.
Under the terms of the lease, the annual rent for the first 15 years escalated from $20,000 in 1966 to $33,000 in 1981. In the event lessee exercised a renewal option, the parties agreed that the annual rent would be seven percent of the value of the demised premises as of the date of commencement of each successive 10-year period.[2] The lease defines the "value of the demised premises" to include the value of both the land and the buildings and improvements located on it. If the parties fail to agree upon the value of the premises for purposes of calculating the annual rent, the lessor and lessee are each to select an appraiser to value the property. If the parties continue to dispute valuation, the lease provides for the appointment of a third appraiser to settle the issue.
In March 2005, lessee renewed the lease for the second 20-year term, such term commencing on November 1, 2006. Unable to negotiate the rent for the first 10 years of that renewal term, lessor and lessee each retained an appraiser in accordance with the procedure outlined in the lease. Lessor's appraiser valued the premises at $7.1 million while lessee's appraiser valued it at $3.43 million.[3] According to lessee's appraiser, one of the principal reasons for the disparity between the two appraisals *631 was the fact that he considered the effect of the net lease on the value of the premises while lessor's appraiser did not take the lease into consideration.
Lessee commenced this action seeking a declaratory judgment that the lease and its term and conditions must be taken into account in calculating the value of the premises for purposes of determining the annual rental rate for the first 10 years of the second renewal term. Lessor counterclaimed for a declaration that the lease should not be considered in appraising the property. Both parties moved for summary judgment.
Supreme Court granted lessor's motion and declared that the lease is not to be considered in calculating the value of the premises, and the Appellate Division affirmed. We granted lessee leave to appeal and now reverse.

Analysis
In New York Overnight Partners v Gordon (88 NY2d 716 [1996]), the owner of a parcel of land in New York City had a long-term lease with the owner of a hotel located on the property. The rent for the 15-year renewal term of the lease was to be calculated at 6½% of the "appraised value of the land" (id. at 718). The lease expressly excluded from the definition of "land" the "buildings and improvements thereon erected" (id. at 719 n 1). When the parties deadlocked on the meaning of the phrase "appraised value of the land," they sought judicial interpretation to settle the dispute. We affirmed the Appellate Division order directing the appraiser "to determine the value of the land as if vacant and unimproved, subject to current zoning restrictions and contractual limitations, and to consider the effect of the lease on the value of the land" (id. at 720). In reaching that conclusion, we observed that "[w]hen the language of the lease so dictates, appraisals must take into consideration all restrictionsincluding current zoning regulationsand encumbrances on the land, as well as the lease term" (id. at 721).
Here, article 33 (c) of the lease provides that the net rent for the first 10 years of the second renewal term "shall be at the rate per annum of a sum equal to seven percent (7%) of the value of the demised premises as of the date of commencement of such first ten years, to wit, November 1, 2006, such value to be determined as provided in Article 30." Article 30, in turn, defines the term "value of the demised premises" to mean
"the value of the demised premises together with *632 all buildings and improvements thereon including any and all additions and improvements erected by Tenant. In the determination of such `value of the demised premises' as herein provided no effect shall be given to any damage, destruction or loss which Tenant is obligated to repair, replace or rebuild, and any existing or possible future damage, destruction or loss shall not be taken into account for the purposes of such determination."[4]
The lease is silent as to whether the lease itself should be taken into account in determining the value of the demised premises.
Lessor argues that New York Overnight Partners, which required consideration of the lease, is distinguishable because the property in that case was to be valued as if vacant while the valuation of the property here must include both the land and buildings. Further, while acknowledging that the lease may impact the value of the property, lessor nevertheless contends that the absence of language in the lease expressly requiring its consideration means that the appraisers were obligated to ignore it. Lessee counters that because the net lease affects the property value, it must be considered unless the lease specifically precludes the appraisers from factoring it into the valuation.
In general, "the market value of real property is the amount which one desiring but not compelled to purchase will pay under ordinary conditions to a seller who desires but is not compelled to sell" (Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d 273, 277 [1975], rearg denied 37 NY2d 924 [1975]; see also Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon, 88 NY2d 724, 729 [1996]). Case law has long recognized that "valuations of land must take into consideration all encumbrances thereon, including restrictions as to its use, unless there is a clear provision to the contrary" (Plaza Hotel Assoc. v Wellington Assoc., 55 Misc 2d 483, 487 [Sup Ct, NY County 1967], affd 28 AD2d 1209 [1st Dept 1967], affd on Sup Ct op 22 NY2d 846 [1968], rearg denied 22 NY2d 972 [1968]; see also United Equities v Mardordic Realty Co., 8 AD2d 398, 400 [1st Dept 1959], affd without op 7 NY2d 911 [1960] ["Unless there be express provision to the contrary, the provisions of the lease between the parties insofar as they affect the fair market *633 value of the land must be given effect"]). In valuing real property "[s]pecial attention must be given to limitations on ownership rights, which include easements, encroachments, leases, and the disposition of air or subsurface rights" and an appraiser must "analyze all of the economic benefits or disadvantages created by the lease" (Appraisal Institute, The Appraisal of Real Estate, at 55, 82 [12th ed]).
Additionally, unless the lease agreement provides otherwise, appraisers generally consider the highest and best use of the property in determining its value (see id. at 305).[5] This is true whether the property is valued as vacant or developed (see id. at 306).[6] But in determining the highest and best use of a property, appraisers necessarily must examine any restrictions or limitations, including long-term leases, that may impact the highest and best use for which the property may be utilized (see id. at 311, 316).
We therefore conclude that, absent an agreement to the contrary, the effect of a net lease must be considered in valuing property for the purpose of setting rent for a renewal lease term. Such a rule comports with precedent, appraisal practices and common sense. If the parties to a lease desire to exclude that encumbrance in valuing the property, they need only include language to that effect in their agreement. Indeed, courts have routinely enforced such provisions (see e.g. 201-203 Lexington Ave. Corp. v 205/215 Lexington Ltd. Partnership, 224 AD2d 183 [1st Dept 1996], lv denied 88 NY2d 813 [1996]; Ruth v S.Z.B. Corp., 2 Misc 2d 631 [Sup Ct, NY County 1956], affd 2 AD2d 970 [1st Dept 1956]).
Here, although the net lease expressly precludes the consideration of any damage or destruction that lessee is obligated to repair, it does not exclude existence of the lease itself in valuing the premises. Consequently, the appraisers must examine the effect of the lease's term and conditions in determining the value of the property in connection with establishing the net rent.
*634 Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment granted declaring in accordance with this opinion.
Order reversed, etc.
NOTES
[1] The property is currently owned by Second Corporate's successors-in-interest: defendants The Horace Wilson Marital Trust, Julia B. Wilson, Trustee; The John A. Wilson Revocable Trust U/A Dated 3/1/00, John A. Wilson, Trustee; and Anne W. Evans. Defendants will be collectively referred to as "lessor."
[2] The parties also agreed that the annual rent for the relevant 10-year period could not be less than the rent in effect during the preceding period.
[3] Lessor's appraiser employed both the comparable sales and income capitalization approaches; lessee's appraiser used only the income capitalization method.
[4] The lease separately describes the "demised premises" as "[a]ll those certain lots, pieces or parcels of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan" matching a specified metes-and-bounds description.
[5] The highest and best use of a parcel "provides the foundation for a thorough investigation of the competitive position of the property in the minds of market participants. Consequently, highest and best use can be described as the foundation on which market value rests" (Appraisal Institute, The Appraisal of Real Estate, at 305 [12th ed]).
[6] Indeed, lessor's and lessee's appraisers each examined the highest and best use of the premises in their respective appraisal reports in this case.